IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STARNET INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19 C 1425 |
| | ) |
| ADAM RUPRECHT and DANIEL | ) |
| O'REILLY, as Independent | ) |
| Administrator of the Estate | ) |
| of Patrick O'Reilly, assignees | ) |
| of Deerfield Construction Co. | ) |
| and Westfield Insurance Co., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On December 26, 2013, Patrick O'Reilly was killed and Adam Ruprecht was injured in an incident that took place on a construction worksite in Vernon Hills, Illinois. In 2014, Ruprecht and Daniel O'Reilly, the administrator of Patrick O'Reilly's estate, each sued Deerfield Construction Co., the general contractor, and P.S. Demolition, a subcontractor, alleging negligence. The two cases were consolidated. Deerfield filed third-party complaints for contribution against P.S. Demolition.

The complaint in the O'Reilly suit alleged that Patrick O'Reilly was not employed by P.S. Demolition. P.S.'s liability insurer, Seneca Specialty Insurance Co., filed declaratory judgment suit in state court alleging that it had no liability on either lawsuit. Seneca ultimately prevailed based on an exclusion in the insurance policy for injuries to employees or temporary workers of the insured. StarNet, which had issued a "worker's

compensation and employers liability" insurance policy to P.S. and which had been named as a defendant in Seneca's lawsuit, counterclaimed seeking a declaration of non-coverage for the O'Reilly suit on the ground that the policy covered only actions by P.S.'s employees. Alternatively, StarNet contended that any coverage for the O'Reilly suit would be limited by an exclusion in the StarNet policy barring coverage for that portion of the insured employer's exposure above the so-called "*Kotecki* cap," a point to which the Court will return shortly. StarNet obtained a declaratory judgment that it had no duty to defend P.S. in the O'Reilly case because its policy did not provide coverage absent an allegation that the claim arose from an injury to an employee of P.S.

In February 2019, the O'Reilly estate and Ruprecht settled their suits against Deerfield Construction. As part of the settlements, Deerfield and its insurance carrier Westfield Insurance Co. assigned to the O'Reilly estate and Ruprecht their contribution rights against P.S. Demolition. Earlier, the state court had entered an order limiting any judgment against P.S. to its insurance coverage (this is said to be the result of a bankruptcy in which P.S. was adjudicated to have no assets). In late February 2019, StarNet—which had essentially stepped into P.S.'s shoes for this purpose—entered into a stipulation with Ruprecht and the O'Reilly estate. Their stipulation included agreement to, among other things, the following:

- Patrick O'Reilly and Adam Ruprecht were employees of P.S. at the time of the incident;
- Deerfield and Westfield had assigned their contribution rights against P.S. to the O'Reilly estate and Ruprecht;
- A $1 million judgment would be entered against P.S., which admitted liability,

2

except for StarNet's coverage defenses;

- This judgment reflected P.S.'s pro rata share of the liability to the O'Reilly estate and Ruprecht; and

- If the O'Reilly estate and Ruprecht prevailed in a declaratory judgment action, then StarNet would pay them $1 million.

StarNet then filed this lawsuit against the O'Reilly estate and Ruprecht, seeking a declaratory judgment that it has no liability to them in excess of P.S.'s liability under worker's compensation law. The Court has jurisdiction based on diversity of citizenship. StarNet has moved for judgment on the pleadings on count 1 of its complaint.[1]

## Discussion

The dispute before the Court involves the following terms in the insurance policy that StarNet issued to P.S. Demolition:

PART TWO

EMPLOYERS LIABILITY INSURANCE

    A.    How This Insurance Applies
This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
1) The bodily injury must arise out of and in the course of the injured employee's employment by you.

. . .

---

[1] In count 2 of its complaint, StarNet seeks a declaratory judgment that Deerfield's assignment to the O'Reilly estate and Ruprecht is improper. Count 2 is not at issue on StarNet's motion for judgment on the pleadings.

3

> B. We Will Pay
> We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.
>
> . . .
>
> C. Exclusions
> This insurance does not cover:
> 1) Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner[.]
>
> . . .
>
> D. We Will Defend
> We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
>
> We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

Compl., Ex. 1 at 8-9. An endorsement to the policy modified exclusion 1, quoted above, to read as follows:

> C. Change Part Two-C. Exclusions 1, as follows:
> This insurance does not cover
> 1. liability assumed under a contract, including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act and the Workers Occupational Disease Act. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner[.]

*Id.* at 21.

The language of exclusion 1 is at the heart of the parties' dispute in the present case. StarNet contends that all that P.S. "legally must pay" is its limited liability as O'Reilly and Ruprecht's employer under the Illinois Workers Compensation Act. It

4

contends that the liability that P.S. agreed to assume under the settlement is liability that it "assumed under a contract," specifically an agreement to waive the limits on its liability set under the IWCA. As a result, StarNet contends, it is not liable for any amount over the IWCA's limits. It has moved for judgment on the pleadings based on these contentions.

To understand the parties' contentions, a brief discussion of the liability of Illinois employers for their employees' injuries is required. The most common way in which an employer may be liable to an employee for a work-related injury is via the IWCA. The IWCA provides a schedule for determining compensation for specific injuries and places financial limits on the employer's liability. *See* 820 ILCS 305/7, 8. In exchange for limited liability, the employer gives up its common law defenses to the employee's claim. *Id.* 5, 11.

An injured employee may also be able to make a claim against a third party, such as a general contractor, whose negligence caused or contributed to the employee's injury. Claims of this type are not subject to the IWCA's limitations. And although the IWCA precludes an employee from bringing a civil suit against his employer, a third party non-employer whom the employee sues may file a third party claim for contribution against the employer. This is a second way in which an employer may effectively be liable for an employee's work-related injuries. *See generally Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 224 Ill. 2d 550, 556-67, 866 N.E.2d 149, 153-54 (2007).

Through a series of court decisions following the adoption of the Illinois Joint Tortfeasor Contribution Act, Illinois employers "became potentially liable for unlimited contribution" despite the IWCA's limits on their direct liability to employees. *Id.* at 557,

5

866 N.E.2d at 154. "The result was to deprive the employer of the limited liability conferred by the Workers' Compensation Act." *Id.* at 558, 866 N.E.2d at 154. In 1991, however, the Illinois Supreme Court rule, in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), that an employer's maximum liability on a third party claim for contribution "is limited to its liability to its employee under the Workers' Compensation Act." *Va. Sur. Co.*, 224 Ill. 2d at 558, 866 N.E.2d at 154-55. This is commonly referred to as the "*Kotecki* cap." The Supreme Court went on to hold "that an employer may waive its *Kotecki* protection and thereby be liable for its full *pro rata* share of contribution." *Id.* at 558, 866 N.E.2d at 155. This is typically done under a contractual indemnity term in which a subcontractor agrees to indemnify and hold harmless a general contractor or owner for injury in connection with the subcontractor's work. "[I]n these provisions, an employer agrees to unlimited liability by waiving the *Kotecki* limitations as to contribution claims. As such, the employer is waiving its affirmative defense provided by the Workers' Compensation Act." *Id.* at 559, 866 N.E.2d at 155 (citation omitted). One may safely assume that waivers of the *Kotecki* cap are insisted upon by general contractors who want to preserve their ability to shift a more significant share of liability for subcontractors' for employees' injuries to the subcontractors.

    In this case, it is undisputed that the $1 million liability that P.S. Demolition assumed exceeds its worker's compensation liability. StarNet contends it is not liable for the excess amount under its insurance policy because it represents liability that P.S. "assumed under a contract" that is subject to the previously-quoted policy exclusion. Defendants disagree. They contend that P.S.'s liability is liability in tort, not liability

6

assumed under a contract. Their argument is as follows: the liability of an employer on a claim for contribution is liability imposed by tort law. *Kotecki* imposed a limit on this and thus created a defense for an employer. But this, defendants contend, does not alter the underlying character of the liability, which is liability in tort. And if an employer waives the *Kotecki* cap, that is simply a waiver of a defense to tort liability; it does not convert it into liability assumed under a contract.

Defendants' argument, however, does not square with the language of the insurance policy. An insurance policy is a contract, and the primary goal of contract interpretation is to give effect to the parties' intentions as expressed in the contract. *See, e.g., Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999, 1003 (2010). Unambiguous language in an insurance policy is applied as it is written in the policy. *Id.* at 433, 930 N.E.2d at 1004. In this case the insurance policy directly addresses waivers of the *Kotecki* cap and excludes liability based on such a waiver. Specifically, the amended language of the relevant exclusion, as set out in the policy endorsement, says that the insurance does not cover "liability assumed under a contract, *including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act.*" Compl., Ex. 1 at 21 (emphasis added). This language could hardly be clearer. The policy term "liability assumed under a contract" expressly includes an agreement by P.S. to waive its right to limit its liability to the amount payable under the IWCA. That is what happened here. The Court concludes that the liability at issue is covered by the just-

assumed under a contract. Their argument is as follows: the liability of an employer on a claim for contribution is liability imposed by tort law. *Kotecki* imposed a limit on this and thus created a defense for an employer. But this, defendants contend, does not alter the underlying character of the liability, which is liability in tort. And if an employer waives the *Kotecki* cap, that is simply a waiver of a defense to tort liability; it does not convert it into liability assumed under a contract.

Defendants' argument, however, does not square with the language of the insurance policy. An insurance policy is a contract, and the primary goal of contract interpretation is to give effect to the parties' intentions as expressed in the contract. *See, e.g., Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999, 1003 (2010). Unambiguous language in an insurance policy is applied as it is written in the policy. *Id.* at 433, 930 N.E.2d at 1004. In this case the insurance policy directly addresses waivers of the *Kotecki* cap and excludes liability based on such a waiver. Specifically, the amended language of the relevant exclusion, as set out in the policy endorsement, says that the insurance does not cover "liability assumed under a contract, *including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act.*" Compl., Ex. 1 at 21 (emphasis added). This language could hardly be clearer. The policy term "liability assumed under a contract" expressly includes an agreement by P.S. to waive its right to limit its liability to the amount payable under the IWCA. That is what happened here. The Court concludes that the liability at issue is covered by the just-

quoted sentence of the policy exclusion.[2]

Defendants argue, in the alternative, that the next sentence of the relevant exclusion—stating that "this exclusion does not apply to a warranty that [P.S.'s] work will be done in a workmanlike manner"—renders the policy exclusion inapplicable to the liability in question. Defendants contend that in the underlying lawsuit, P.S. *was* claimed to be liable for failing to perform its work in a workmanlike manner. In support, defendants offer affidavits of expert witnesses that they retained in the underlying case, who stated—well before the settlement with P.S. was concluded—that P.S. had not, in fact, performed its work in a workmanlike manner and that this caused or contributed to the injuries to O'Reilly and Ruprecht. StarNet has moved to strike the affidavits, saying that they are out of place on a motion for judgment on the pleadings.

The Court begins, and ends, with the relevant language in the policy. StarNet discusses, at some length, its contention regarding why the "warranty" language appears in the policy exclusion. Specifically, StarNet contends that the exclusion is there to afford coverage in states where an express promise of indemnity is required in order for a non-employer sued for a worker's injuries to bring in the worker's employer on a third party claim—which is not the case in Illinois, where the law recognizes contribution among joint tortfeasors. But based on the present record, there is no way the Court can make such a determination. To put it another way, on the current record

---

[2] Relatedly, even if the underlying liability is tort liability and not contract-based liability as defendants contend, that does not help them. The policy language refers not to contract-based liability but rather to liability *assumed under* a contract. Here P.S.'s underlying liability might be tort-based, but the liability at issue here—for the amounts above the *Kotecki* cap—is liability that it assumed under an agreement, i.e. under a contract.

8

StarNet's argument for why the "warranty" language appears in the insurance policy is speculative. And in any event the initial question is what the language says, not why the drafter decided to put it there. It is only if contract language is ambiguous—that is, reasonably susceptible of more than one interpretation—that extrinsic evidence like what StarNet is discussing becomes admissible. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 142 n.5, 835 N.E.2d 801, 828 n.5 (2005). It is true, as StarNet argues, that contracts are construed to give effect to the parties' intent, but that's a reference to contractual intent *as expressed in the contract*. *See, e.g., Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1017 (2020). That is not what StarNet is referencing here.

StarNet argues that the unambiguous language in the preceding sentence, excluding liability assumed under an agreement to waive the *Kotecki* cap, essentially trumps everything, making it clear that P.S.'s assumed liability in excess of the cap is not covered. But the warranty-based exception-to-the-exclusion language tends to undermine this contention; it says *the exclusion*—in other words, the exclusion described just before—does not apply to a warranty to perform work in a workmanlike manner. This suggests that the warranty language may, in appropriate circumstances, undercut the exclusion for an employer's waiver of the *Kotecki* cap.

The bottom line, however, is that the warranty exception does not apply here. StarNet contends, and defendants do not dispute, that by the time of the settlement, all warranty or contract-based claims brought by Deerfield and P.S. in the underlying case had been severed and refiled in separate litigation, evidently litigation to which the O'Reilly estate and Ruprecht were not parties. Thus the settlement of the claims

9

against P.S. in the personal injury cases could not possibly have involved warranty-based liability. As StarNet puts it, "there [were] no contract claims that remained . . . that could have served to trigger the exception for coverage based on the warranty language." Pl.'s Mem. at 13. That probably puts it too narrowly. The policy language does not say anything about warranty "claims"; it simply says that the exclusion does not apply to a warranty to perform work in a workmanlike manner. But in the underlying cases brought by the O'Reilly estate and Ruprecht, there could be no *liability* based on or arising from "a warranty that [P.S.'s] work will be done in a workmanlike manner," because there no such claims that remained in those cases. In short, even under the broadest possible construction of the pertinent policy language advocated by defendants, the exception to the exclusion does not apply in this case. *Cf. Western Cas. & Sur. Co. v. Brochu*, 195 Ill. 2d 486, 498, 475 N.E.2d 872, 877 (1985) (interpreting a similarly-worded exception to a similarly-worded policy exclusion—albeit not a *Kotecki* cap waiver exclusion—to "merely remove[ ] breach of warranty from the specific exclusion relating to contractual liability").

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for judgment on the pleadings as to Count 1 of plaintiff's complaint [22]. Plaintiff's motion to strike is terminated as moot [32]. The case is set for a status hearing on January 8, 2020 at 9:30 a.m. A joint status report is to be filed by January 6, 2020, discussing how the parties propose to deal with Count 2 of the complaint.

Date: December 17, 2019

_____
MATTHEW F. KENNELLY
United States District Judge